UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

FILED
2008 AUG -7 AM 10: 53
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY_____ DEPUTY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>        v.<br><br>Sergio AISPURO-Badillo,<br><br>        Defendant(s) | Magistrate Case No. '08 MJ 2 4 4 7<br><br>COMPLAINT FOR VIOLATION OF:<br><br>Title 8 U.S.C., Sec. 1324 (a)(1)(A)(ii)<br>Transportation of Illegal Aliens |

The undersigned complainant, being duly sworn, states:

On or about **August 6, 2008,** within the Southern District of California, defendant **Sergio AISPURO-Badillo** with the intent to violate the immigration laws of the United States, knowing and in reckless disregard of the fact that aliens, namely, **Roberto OLVERA-Vite, Carmen FLORES-Lopez,** and **Lidia LOPEZ-Gutierres** had come to, entered and remained in the United States in violation of law, did transport and move, said aliens within the United States in furtherance of such violation of law; in violation of Title 8, United States Code, Section 1324(a)(1)(A)(ii).

And the complainant further states that this complaint is based on the attached statement of facts, which is incorporated herein by reference.

SIGNATURE OF COMPLAINANT
James Trombley
Senior Patrol Agent

SWORN TO BEFORE ME AND SUBSCRIBED IN MY PRESENCE, THIS 7th DAY OF **AUGUST, 2008**

Louisa S. Porter
UNITED STATES MAGISTRATE JUDGE

CONTINUATION OF COMPLAINT:
Sergio AISPURO-Badillo

## PROBABLE CAUSE STATEMENT

Furthermore, the complainant states that **Roberto OLVERA-Vite, Carmen FLORES-Lopez,** and **Lidia LOPEZ-Gutierres,** are citizens of a country other than the United States; that said aliens have admitted that they are deportable; that their testimony is material, that it is impracticable to secure their attendance at the trial by subpoena; and they are material witnesses in relation to this criminal charge and should be held or admitted to bail pursuant to Title 18, United States Code, Section 3144.

On August 6, 2008, Border Patrol Agent A. Djokich was performing assigned duties near Jacumba, California. Jacumba is located approximately 25 miles east of the Tecate, California Port of Entry, and less than one mile north of the United States/Mexico International Border. Agent Djokich was operating an unmarked DHS surveillance vehicle and was in plainclothes. At approximately 11:30 p.m., Agent Djokich observed a white Ford Fusion exit the westbound lanes of Interstate 8 (I-8) at the Jacumba Exit. After exiting the interstate, Agent Djokich observed the Ford completely circle the two gas stations located immediately off of the interstate. The driver parked his vehicle and attempted to use a cellular phone. The driver then exited the vehicle and used a payphone. After using the pay phone, the driver retuned to the vehicle and proceeded to travel eastbound of I-8. Agent Djokich continued surveillance of the vehicle as it traveled eastbound on I-8. Agent Djokich contacted Border Patrol Dispatch and requested registration/stolen vehicle checks on the Ford which was registered out of El Centro, California.

The Ford exited I-8 at the In-Ko-Pah Exit and proceeded eastbound on In-Ko-Pah Park Road. The driver then pulled onto the shoulder and stopped. This further raised Agent Djokich's suspicions as there is only one business located on In-Ko-Pah Park Road and few residences. Agent Djokich approached the driver, identified himself as a Border Patrol Agent, and questioned him as to his immigration status and activities in the area. The driver identified himself as defendant **Sergio AISPURO-Badillo**, and handed Agent Djokich a Permanent Resident Alien Card and a valid California Drivers License. The defendant stated he was in the area to help a friend with a flat tire, though he was unable to locate or make contact with him. The defendant told Agent Djokich that he intended to return to El Centro for the remainder of the night.

At approximately 12:30 a.m., Agent Djokich observed what he believed to be the same Ford Fusion exit I-8 at the Jacumba Exit and drive behind the Chevron Gas Station out of his view. After less than 30 seconds, the Ford reemerged driving at an increased rate of speed away from the Chevron Station and entered onto the eastbound lanes of I-8. Because of the speed with which the vehicle was traveling, Agent Djokich could not attest with reasonable certainty that the vehicle appeared to be more heavily laden as it passed his location. Agent Djokich did however, observe that the vehicle seemed to possess a newfound bounce while accelerating that he had not previously observed, suggesting that the vehicle was carrying an additional weight. Believing that the driver of the Ford had just picked up a group of illegal aliens, Agent Djokich followed the vehicle onto I-8. As the vehicle continued driving eastbound on I-8, it accelerated to such a speed where Agent Djokich was unable to maintain surveillance. Agent Djokich contacted Border Patrol Agent Joseph A. Remenar, also assigned to BSAT, via agency radio and relayed the vehicle's last known position and direction of travel. Shortly thereafter, Agent Remenar, operating an unmarked DHS surveillance vehicle and in plainclothes, observed a vehicle that matched the description.

**CONTINUATION OF COMPLAINT:**
Sergio AISPURO-Badillo

Agent Remenar entered onto the eastbound lanes of I-8 in order to confirm that the vehicle he observed was the same vehicle that Agent Djokich had described. Agent Remenar was able to maintain a distant visual on the vehicle as it continued eastbound towards El Centro, California despite the vehicle's rate of speed. Eventually, Agent Remenar was able to get close enough to read the Ford's displayed California license plate. Agent Djokich recognized this plate as the same one belonging to the vehicle he had encountered an hour earlier, which he relayed to Agent Remenar. Agent Remenar contacted Border Patrol Dispatch and confirmed that this was the same vehicle.

BSAT Agents contacted agents assigned to the El Centro Border Patrol Station in order to attempt a vehicle stop of the Ford. Border Patrol Agent P. Salmeron, who was operating a marked DHS pursuit sedan and in full Border Patrol uniform, responded to BSAT Agents' request for assistance. Agent Salmeron positioned herself behind the Ford and attempted to initate a vehicle stop approximately two miles west of the Dunaway Road Exit of I-8. The driver of the Ford did not yield. The driver of the Ford exited I-8 at Dunaway Road, and drove through the stop sign at the end of the off ramp and immediately entered back onto the eastbound lanes of I-8. The driver of the Ford continued driving eastbound on I-8 for approximately two miles and then jumped out of the vehicle leaving it in gear. As the driver attempted to flee on foot, the vehicle struck a fence with four occupants inside. Two of the vehicle's occupants attempted to flee from the vehicle but were quickly apprehended by responding agents. Responding agents identified themselves to the vehicle's four occupants and questioned them as to their citizenship. Each subject freely admitted to being citizens of Mexico present in the United States without any legal immigration documents that would allow them to be or remain in the country legally. At this time, the four subjects were placed under arrest and transported to the Boulevard, California Border Patrol Station for processing.

The driver continued running northbound in an attempt to flee from pursuing agents. Border Patrol Agent R. Duval observed an individual trying to hide in the grass. When Agent Duval commanded the subject not to move but the subject began running. Agent Duval began chasing the subject and as he got a hand on the individual, the subject batted Agent Duval's hand away and continued running, ignoring the repeated commands for him to stop. Agent Duval again caught up to the driver as they approached a large irrigation canal. The driver jumped into the canal in a further attempt to evade apprehension. As Agents Remenar and Duval approached the driver continued to ignore agents' warnings to stop resisting. Agent Remenar deployed his agency issued Oleoresin Capsicum (OC) spray in an attempt toget the driver to comply. Soon after being exposed to the OC, the driver started obeying agents' commands and was safely placed in handcuffs. The driver was placed under arrest for alien smuggling. The defendant was transported to the Boulevard Border Patrol Station for processing.



**DEFENDANT STATEMENT:**

Defendant **Sergio AISPURO-Badillo** was advised of his Miranda Rights in the English language which he understood and agreed to answer questions without an attorney present. AISPURO was born in Mexicali, Baja California Norte, Mexico. AISPURO stated he was a United States Citizen. AISPURO claimed that he had derived his citizenship from his mother.

AISPURO stated that on August 5, 2008, he received a call from a friend of his detailing a flat tire. AISPURO said that he left El Centro, California with the intent of picking his friend up. When AISPURO was unable to locate his friend, he stated that a man approached him at the Shell Gas Station located in Jacumba, California and offered him payment to drive him to Los Angeles, California. AISPURO said that a final payment amount was never agreed upon, but that he expected to be paid around $500.00 USD. AISPURO stated that he was well aware that the man who had approached him was an illegal alien. AISPURO firmly stated that he was from the border area, and that issues such as payment for transporting illegal aliens was well known to him. AISPURO said that the vehicle he was arrested transporting aliens in belonged to his mother-in-law. AISPURO said that he returned to the place where the man offered him money to be transported to Los Angeles. AISPURO stated that when he arrived at the location the man jumped into his vehicle along with three or four other individuals, whom he claimed he was not originally aware of. AISPURO said that he was driving very fast. When asked how fast he believed he was driving while transporting the illegal aliens, he said that he believed he was driving over 100 miles per hour. AISPURO stated that he didn't stop when the marked DHS pursuit sedan activated its emergency lights and audible siren because he didn't want to be arrested and that he was afraid of being shot. AISPURO said that he was looking for a place to bail out of the vehicle so that he would not be arrested. AISPURO admitted that he ran from agents, ignored their commands, and resisted arrest because he did not want to be caught.

**MATERIAL WITNESSES STATEMENTS:**

Material witnesses **Roberto OLVERA-Vite, Carmen FLORES-Lopez,** and **Lidia LOPEZ-Gutierres,** agree in summary that they are citizens and nationals of Mexico illegally present in the United States. They stated they do not have any immigration documents that would allow them to enter or remain in the United States legally. Material witnesses OLVERA and FLORES stated that they were to pay $2,000.00 to $3,000.00 (USD) to be smuggled into the United States. Material Witness FLORES stated her brother made the smuggling arrangements for her and was unaware of the smuggling fee. Material witness OLVERA was shown a photographic line up and was able to identify defendant **Sergio AISPURO-Badillo** as the driver of the vehicle.